# EXHIBIT 18

Case 1:05-cv-01196-MEF-DRB    Document 14-20    Filed 10/24/2006    Page 1 of 3

**Affidavit of COL David B. Cripps, Commander ATTC**

1. I, COL David B. Cripps, served as the Commander of the US Army Aviation Technical Test Center at Fort Rucker, Alabama from June 2001 through June 2004. In this capacity I exercised overall responsibility for all official activities of the Test Center and for its military, civil service, and contractor civilian personnel.

2. Shortly after assuming Command, I was made aware that the Test Center had been found by the Office of Federal Operations to be in non-compliance with a negotiated settlement agreement (NSA) regarding Ms. Ruthie Windsor from an Equal Employment Opportunity (EEO) complaint filed some time prior to my arrival.

    a. The basis of the determination of non-compliance was that the Test Center had not afforded Ms. Windsor the opportunity to review and have input into a position description (PD) for her position within the Test Center prior to submission of the PD to the Southeast Civilian Personnel Operations Center (SE CPOC) for grading. This was one of several provisions of the NSA, and the only provision with which OFO found the Test Center to be in non-compliance. I directed the Test Center Adjutant, Mr. George Stinson (since deceased) to provide Ms. Windsor with an electronic copy of her PD and to solicit input from her regarding the PD. Ms. Windsor did not make any substantive changes to any of the duties already listed on the PD. Rather she added several lesser responsibility duties not originally listed on the PD. I directed Mr. Stinson to forward verbatim the PD provided by Ms. Windsor to SE CPOC, which he did.

    b. When the grade determination was made by SE CPOC and returned to Fort Rucker, the position was determined to be at the GS-11 grade level, which was the grade level already held by Ms. Windsor. In the relevant provision of the NSA the Test Center had agreed that should the PD come back from SE CPOC graded at the GS-12 level, Ms. Windsor would be non-competitively promoted to that grade and placed on the new PD. Should the PD come back from SE CPOC graded at the GS-11 level or lower, the Test Center had agreed it would retain Ms. Windsor on her old PD at her current grade. However in the intervening time between establishing the NSA and the issuance of the grade determination, the Office of Personnel Management (OPM) had disestablished the GS series in which Ms. Windsor's earlier position had been classified, transferring the position within that series to a new Information Technology series GS-2210-xx. This created a dilemma in that the Test Center had agreed to retain Ms. Windsor on the legacy PD, but the GS series of the legacy PD had been disestablished and no longer existed.

    c. After consultation with the Fort Rucker EEO Office, the Fort Rucker Civilian Personnel Assistance Center (CPAC), and the Fort Rucker Staff Judge Advocate's Labor Counselor, a legal opinion was provided to me that placing Ms. Windsor on her legacy PD but with the new GS-2210 job series would be in compliance with the NSA. I held a meeting in my office with Ms. Windsor, her representative (Mr. Paul Phillips), Ms. Melissa Harry of the Fort Rucker EEO Office, Mr. Stinson, and myself, during which time I advised Ms. Windsor of the Test Center's intent to place her on her legacy PD as a

GS-2210-11 Information Technology Specialist. She was subsequently advised by her supervisor, LTC Keith Darrow, that such personnel action had taken place.

    d. The Fort Rucker EEO office officially advised OFO of the actions taken by the Test Center to come into compliance with the NSA, and shortly thereafter received correspondence from OFO acknowledging that the Test Center was no longer in non-compliance. Ms. Windsor repeatedly appealed this decision to various EEOC officials, and in all cases was advised that the decision remained unchanged.

    e. After several unsuccessful appeals, Ms. Windsor filed another complaint with the Fort Rucker EEO Office, alleging that her supervisor (LTC Darrow) and I had unfairly denied her a promotion in that he had communicated to her that she would remain a GS-11. This was in fact not a determination reached by either LTC Darrow or myself, but rather merely LTC Darrow communicating to Ms. Windsor the results of the grade determination made by SE CEPOC in compliance with the NSA. With full knowledge of this situation, the Fort Rucker EEO Office denied to accept the formal complaint because it did not represent a new case, but was rather merely communicating to Ms. Windsor the results of complying with the earlier NSA. Ms. Windsor appealed this to the Department of the Army, which ruled in the Agency's favor, and subsequently to OFO, which recently remanded the case to Fort Rucker on the basis that the Fort Rucker EEO Office improperly denied accepting the case.

3. There was absolutely no wrongdoing on the part of the Test Center in this new complaint of Ms. Windsor. Rather, the Test Center merely provided the verbatim words of Ms. Windsor without amendment to SE CPOC in strict compliance with the NSA. Upon receipt of the results of SE CPOC's grading action, the Test Center merely advised Ms. Windsor of those results and retained Ms. Windsor at her present grade in rigid compliance with the NSA. There was no determination on the part of LTC Darrow or myself as to the appropriate grade for Ms. Windsor's position, as that determination was made solely by SE CPOC. These actions were taken because the NSA had been agreed upon by both the Test Center and Ms. Windsor. Each party agreed to abide by the determination of SE CPOC.

4. While the Test Center can certainly empathize with Ms. Windsor's disappointment in her position not grading out by SE CPOC as highly as she had hoped, it must insist that Ms. Windsor comply with the provisions of the NSA to which she agreed and under which provisions she has already enjoyed considerable other benefit.

I have read this document, and under penalty of perjury, I certify that, to the best of my knowledge, the statements made are true and correct.

*[signature]*

David B. Cripps
17 June 2004

55