IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RUTHIE L. WINDSOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.1:05cv1196-MEF-DRB |
| | ) | |
| FRANCIS J. HARVEY, | ) | |
| Secretary of the Army, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM BRIEF IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS, OR IN THE ALTERNATIVE,
MOTION FOR SUMMARY JUDGMENT**

## I.  INTRODUCTION

The Plaintiff, Ms. Ruthie L. Windsor, (hereinafter "Plaintiff" or "Ms. Windsor"), filed the

instant Complaint alleging that the United States Army ("Army") violated the Civil Rights Act of

1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, when the Army unlawfully discriminated against

her based upon her race and gender and retaliated against her for her prior Equal Employment

Opportunity ("EEO") activity.  Ms. Windsor also raises the same factual allegations under the

Civil Rights Act of 1871, 42 U.S.C. § 1983.  Ms. Windsor's allegations address: (1) being

informed that her job description did not warrant and upgrade to the GS-12 level (Complaint, p.

3, ¶¶ 6 & 10; p. 4, ¶ 15); (2) the fact that other information specialists were transferred on

approximately August 20, 2002 (Complaint, p. 3, ¶ 11); (3) receiving a lower than expected

performance evaluation on January 31, 2003. (Id. at p. 4, ¶ 17.); and (4) an alleged alteration to

Ms. Windsor's job description.  (Id. at p. 4, ¶ 18.)

This Court should dismiss all claims predicated upon any legal theory other than Title VII for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.")12(b)(1), as Title VII is the exclusive remedy for unlawful race, sex and retaliation discrimination in federal sector employment. Additionally, this Court should dismiss all claims of sex discrimination and all allegations relating to the transfer of other information specialists pursuant to Fed. R. Civ. P. 12(b)(1) as these claims were never raised in the EEO administrative process and thus have not been administratively exhausted. In a similar vein, this Court should dismiss Ms. Windsor's retaliation claim concerning her January 31, 2003, performance evaluation as this claim was never raised administratively.

For any claim that this Court does not dismiss, the Court should grant the Army summary judgment pursuant to Fed. R. Civ. P. 56. Ms. Windsor cannot establish a *prima facie* case of retaliation because she cannot show that some of her allegations constitute actionable adverse personnel actions, or that there is a connection between her prior protected activity and any of the alleged adverse employment actions. Ms. Windsor cannot establish a *prima facie* case of disparate treatment based upon her race or gender because Ms. Windsor failed to identify a similarly situated comparitor outside her protected classes who was upgrade to the GS-12 level; failed to show that the transfer of other employees affected a term, condition or benefit of her employment; and cannot show the requisite facts to infer discrimination. Even if Ms. Windsor could establish a *prima facie* disparate treatment or retaliation claim, she cannot rebut the Army's legitimate, nondiscriminatory, non-retaliatory reasons for the alleged adverse actions.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     Ms. Windsor is a GS-2210-11, Information Technology Specialist at the United States

Army Aviation Technical Test Center ("ATTC") at Fort Rucker, Alabama. (DEX 1, Formal EEO Complaint, October 21, 2002.)[1]

2.    During the period relevant to this lawsuit, Lieutenant Colonel (LTC) Keith Darrow, Chief of ATTC's Flight Test Directorate, served as Ms. Windsor's immediate supervisor from approximately May of 2002 through January of 2003 and then as her second-level supervisor after February of 2003. (Id; DEX 2, OCI Testimony of Keith Darrow, p. 64-65[2]; DEX 14.)

3.    During the period relevant to this lawsuit, Mr. Windsor's third-level supervisor was COL David Cripps, Commander of ATTC. (DEX 3, Cripps Declaration.)

## ALLEGATIONS IN PLAINTIFF'S COMPLAINTS

4.    Ms. Windsor alleges that the Army discriminated against her based upon her race and gender and in retaliation for her prior EEO activity when she was informed on August 20, 2002, that her position did not warrant an upgrade to the GS-12 level. (DEX 1; Complaint, p. 3, ¶ 6.)

5.    Plaintiff also alleges that the Army discriminated against her based upon her gender when other male information specialists were transferred to a different division and were given more favorable job conditions. (Complaint, p. 3, ¶ 11.)

6.    Finally, Plaintiff alleges that the Army retaliated against her based upon her protected

---

[1]  During the period relevant to this lawsuit, Ms. Windsor worked in ATTC's Test Support Directorate.

[2]  In support of the Defendant's Motion for Summary Judgment, the Army has produced only the relevant portions of the witness testimony during the administrative hearing given its extensive length. (DEX 2.)  Should the Court deem it necessary, however, undersigned counsel will file the entire transcript of the hearing.

EEO activity when her performance evaluation was lowered in January of 2003 and her job description was altered which resulted in her position not being upgraded on August 20, 2002. (Complaint, p. 4, ¶¶ 17-18.)

**HISTORICAL BACKGROUND ON PLAINTIFF'S JOB DESCRIPTION**

7.     Ms. Windsor filed an informal EEO complaint on November 6, 2000, alleging that the Army discriminated against her based upon her race by not including additional duties that she was allegedly performing in her position description.  (DEX 2, OCI Testimony of Ruthie Windsor, p. 7-8.)

8.     Ms. Windsor contended that if the additional duties had been included in her job description, her position would be graded as a GS-12, resulting in her promotion to that level. (Id.)

9.     Ms. Windsor filed a formal EEO complaint on this claim on January 31, 2001.  (DEX 4, Formal EEO Complaint, filed January 31, 2001.)

10.     On April 11, 2001, Ms. Windsor and Army management officials engaged in mediation in an attempt to resolve her EEO complaint.  (DEX 5, Negotiated Settlement Agreement.)

11.     The parties signed a Negotiated Settlement Agreement on April 12, 2001, wherein ATTC officials agreed to afford Ms. Windsor the opportunity to provide input into her position description. (Id.)

12.     ATTC officials agreed that if the position description which Ms. Windsor provided input on was classified at the higher grade (GS-12) by the Civilian Personnel Operations Center ("CPOC"), then Ms. Windsor would be assigned to this higher grade.  (Id.)

13.     On October 10, 2001, Ms. Windsor filed a notice of noncompliance with the Department

of the Army Equal Employment Opportunity Compliance and Complaints Review

Agency ("EEOCCRA").  (DEX 6, Notice of Noncompliance.)

14.    On November 15, 2001, EEOCCRA determined that the Army was in compliance with

the Negotiated Settlement Agreement.  (DEX 7, EEOCCRA Decision.)

15.    Ms. Windsor filed an appeal to the Equal Employment Opportunity Commission's Office

of Federal Operations ("OFO") on December 13, 2001.  (DEX 8, Appeal to OFO.)

16.    On April 30, 2002, OFO determined that the Army was in compliance with all provision

of the NSA, except for the provision that allowed Ms. Windsor to have input into her

position description prior to it being graded and classified.  (DEX 9, OFO Decision.)

17.    OFO ordered the case remanded to the Army for the agency to comply with the one

outstanding provision of the NSA.  (Id.)

18.    On approximately June 3, 2002, Mr. Stinson and Ms. Windsor agreed on the content of

her position description and forwarded her position description to the CPOC for

classification.  (DEX 2, p. 47, 53, 57; DEX 3; DEX 20.)

19.    Ms. Windsor's third-level supervisor, COL Cripps, delegated classification authority to

CPOC for this position.  (DEX 2, p. 58.)

20.    On August 20, 2002, COL Cripps and LTC Darrow informed Ms. Windsor that CPOC's

classification of Ms. Windsor's job description graded out as a GS-11 and, thus, her

position did not warrant an upgrade. (DEX 1.)

21.    Ms. Windsor initiated contact with EEO counselor on September 4, 2002, alleging

discrimination based upon her race when she was informed that her position did not

warrant a promotion to the GS-12 level.  (DEX 10, Informal EEO Complaint In-Take

Form.)

22.    Ms. Windsor amended her informal complaint two days later, September 6, 2002, to

allege that her position was not upgraded due to unlawful retaliation for EEO activity that

occurred on January 31, 2001.  (DEX 11, Amendment to Informal EEO Complaint.)

23.    Ms. Windsor filed a formal EEO complaint on October 21, 2002, alleging discrimination

based upon race and retaliation for the alleged unlawful denial of promotion. (DEX 1.)

24.    Ms. Windsor's informal and formal complaints fail to mention any allegation of sex

discrimination or any other adverse action other than the alleged denied promotion. (DEX

1; DEX 10; DEX 11.)

## COMPARISON TO REX DONALDSON

25.    Ms. Windsor alleges that the Army upgraded the position of Mr. Rex Donaldson

(Caucasian Male)  to the GS-12 level, while she was denied an upgrade.  (Complaint, p.

3, ¶7.)

26.    Ms. Windsor identifies Mr. Donaldson as a similarly situated employee outside her

protective category who received more favorable treatment than her.  (Id.)

27.    Mr. Donaldson is a GS-11 employee and has never been upgraded or promoted to the GS-

12 level.  (DEX 12, Shirly Declaration.)

28.    Mr. Donaldson works in the Data Systems Directorate, Data Processing Division.  He

does not work in the same division of ATTC as Ms. Windsor.  (Id.)

## JOB DESCRIPTION TO CPOC

29.    Ms. Windsor alleges that the Army retaliated against her by submitting two different job

descriptions for CPOC to grade.  (Complaint, p. 4, ¶ 18.)

30.    Ms. Windsor alleges that the agency forwarded a document entitled "Windsor 5.doc" and "Windsor.tif"[3] to CPOC.  (DEX 2, p. 43-45.)

31.    Ms. Windsor testified that the "Windsor5.doc" was the job description that she assisted the command in drafting and that "Windsor5.doc" was an accurate description of the job functions she was performing.  (Id. at p. 45 & 57.)

32.    Ms. Windsor alleges that "Windsor.tif" was an inaccurate job description that CPOC relied upon to deny her an upgrade to the GS-12 level.  (Id. at p. 47-8, & 53.)

33.    Plaintiff's allegation is belied by her admission that she has never seen the "Windsor.tif" document and is ignorant of its contents. (DEX 2, p. 43 & 60.)

34.    Ms. Windsor admitted that a ".tif" document is an electronic photocopy of a document that cannot be altered or changed after it is created.  (DEX 2, p. 59.)

35.    Agency witness Glenda Sammons, Civilian Personnel Advisory Center Specialist, testified that "Windsor.tif" was merely a static electronic copy of "Windsor5.doc" that was submitted so that no one could make any new changes to "Windsor5.doc" (DEX 2, 130.)

36.    COL Cripps designated that a ".tif" copy of Ms. Windsor's job description be sent to CPOC so that there could be no allegation by any party that the job description was altered while at CPOC.  (DEX 3.)

---

[3]  Several agency witnesses testified that "Windsor5.doc" was the Microsoft Word document that was repeatedly exchanged between Ms. Windsor and management in an attempt to reach an agreement on an accurate job description to be sent to CPOC for classification. "Windsor5.doc" incorporated the latest changes that Ms. Windsor requested. (See DEX 20, Email from George Stinson to Ruthie Windsor.)  Because "Windsor5.doc" is a Word document that could be altered, the agency scanned a copy of "Windsor5.doc" to create a ".tif" document (i.e. Windsor.tif) so that it could not be changed.  (DEX 2, p. 59-60 & 129-130.)

**PERFORMANCE EVALUATION FOR PERIOD ENDING JANUARY 31, 2003**

37.    Ms. Windsor alleges the Army retaliated against her when she received a "lowered" performance evaluation for the period ending January 31, 2003.  (Complaint, p. 4, ¶ 17.)

38.    Ms. Windsor testified that in previous years she had received a "1" on her performance appraisals.  (DEX 2, p. 31.)

39.    Ms. Windsor received a "2", the second highest rating, for her 2002 Annual performance evaluation, which she received on January 31, 2003.  (DEX 13, Performance Evaluation.)

40.    A score of "1," "2," of "3" is considered "fully successful."  (DEX 14.)

41.    Ms. Windsor received a "2" rating because she did not exceed requirements on 75% of her objectives, which is the minimum threshold for receiving a "1" rating.  (DEX 14.)

**TRANSFER OF OTHER INFORMATION SPECIALIST**

42.    In approximately May of 2002, ATTC experienced an organizational restructuring that created the Test Support Directorate. (DEX 14.)

43.    Due to the organizational restructuring, employees, including information specialists, were transferred to new Divisions or Directorates. (Id.)

44.    Ms. Windsor is an Information Technology Specialist, GS-2210-11 (INFOSEC), whose primary concentration is in information security.  (Id; DEX 15, Position Description.)

45.    The other information technology specialists, GS-2210s, in ATTC were not performing duties in the information security sub-speciality, instead they performed work in other 2210 series sub-specialities, such as data management and applications software.   (DEX 14.)

46.     The other information technology specialists, GS-2210s, performed substantially different duties than Ms. Windsor because the other information technology specialists' primary duties were associated with processing of flight test data and managing real-time telemetry operations during flight tests.  (Id.)

47.     While other information technology specialists could be transferred to other directorates responsible for flight testing, based upon the duties they performed, the fact that Ms. Windsor's information technology specialist's duties centered upon information security required that she not be transferred outside of the Test Support Directorate.  (Id.)

### III.  ARGUMENT

**MOTION TO DISMISS**

### A.     Any Non-Title VII Claims Raised by Ms. Windsor's Judicial Complaint Are Due to be Dismissed for Lack of Subject Matter Jurisdiction.

Any claim raised by Ms. Windsor that is based upon any legal authority other than Title VII, should be dismissed for lack of subject matter jurisdiction.  Title VII is the exclusive judicial remedy available for a federal employee complaining of job related discrimination.  Brown v. General Services Administration, 425 U.S. 820 (1976).  Based upon the "balance, completeness, and structural integrity of Section 717," the Supreme Court concluded that this amendment was not designed merely to supplement other judicial relief but rather to provide the exclusive judicial remedy for federal employees contesting job-related discrimination. Brown, 425 U.S. at 832.  Any purported claim by Ms. Windsor pursuant to 42 U.S. C. § 1983 is barred by Title VII's

preemptive nature.[4]

**B.    Any Claims That Were Not Raised During the EEO Administrative Process Should be Dismissed for Lack of Subject Matter Jurisdiction**.

Ms. Windsor's allegations concerning her performance appraisal for 2002 (issued on January 31, 2003) and the transfer of other information specialist should be dismissed for lack of subject matter jurisdiction due to Ms. Windsor's failure to raise this claims administratively.

Plaintiff's claims against a federal agency lack subject matter jurisdiction unless the United States has waived its sovereign immunity, which Ms. Windsor has the burden of establishing. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 182, 189 (1936); Tuscon Airport Authority v. General Dynamics Corp., 136 F.3d 641, 644 (9th Cir. 1998); Reynolds v. Army and Air Force Exchange Service, 846 F.2d 746, 748 (Fed. Cir. 1988); Kirkland Masonry, Inc. v. Commissioner of Internal Revenue, 614 F.2d 532, 533 (5th Cir. 1980) (plaintiff's burden to properly plead jurisdiction is particularly heavy when the object of the suit is the sovereign). Federal court jurisdiction cannot be presumed, but must be affirmatively and positively pled. Norton v. Larney, 266 U.S. 511 (1925). In determining whether a case arises under federal law, a court generally is confined to the well-pleaded allegations of the plaintiff's

_____

[4] See Great American Federal Savings and Loan Association v. Novotny, 442 U.S. 366 (1979), the Supreme Court held that Section 1985 may not be invoked to redress violations of Title VII. Id. at 378. The Court noted that, if a violation of Title VII could be asserted through section 1985, an employee could avoid "most if not all of [the] detailed and specific provisions of [Title VII]." Id. at 376. In particular, "the complainant could completely bypass the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII." Id. Additionally, section 1983 specifically redresses violations of rights "under color of state law." 42 U.S.C. §1983. Plaintiff, a federal employee, is complaining of the actions of a federal agency, which is not subject to suit under section 1983. See Seibert v. Baptist, 594 F.2d 423, 429 (5th Cir 1979); see also Bonner v. City of Prichard, Ala., 661 F.2d 1206 (1981). (holding that Eleventh Circuit Court of Appeals has adopted as binding precedent all decisions of the Fifth Circuit Court of Appeals made prior to October 1, 1981).

complaint.  Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804 (1986); Taylor v. Anderson, 234 U.S. 74 (1914).

Because the Plaintiff claims retaliation and race and sex discrimination, her exclusive remedy is Title VII.  *See* Brown, 425 U.S. at 835.  In providing aggrieved federal employees a private right of action in federal court, Title VII requires that federal employees exhaust their administrative remedies prior to commencing such an action. Brown, 425 U.S. at 832; *see also* Loeffler v. Frank, 486 U.S. 549, 559 (1988) ("[Title VII] permits an aggrieved employee to file a civil action in federal court, provided the employee has met certain requirements regarding exhaustion of administrative remedies."); *see also* Bryant v. Bell Atlantic Maryland Inc., 288 F.3d 124, 132 (4th Cir. 2002) ("Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies."); Griffin v. Carlin, 755 F.2d 1516, 1522 (11th Cir. 1985). These rules are not mere technicalities, but integral parts of Congress's statutory scheme of achieving a "careful blend of administrative and judicial enforcement powers." Brown, 425 U.S. at 833; *see also* McKart v. United States, 395 U.S. 185, 195 (1985).  Title VII is a limited waiver of the United States' sovereign immunity: the United States waives immunity from suit for only those claims properly and timely exhausted in the EEO administrative context.  Any claims not properly exhausted administratively lack subject matter jurisdiction to be heard in federal court.

Plaintiff never raised any allegation of sex discrimination in either her informal EEO Complaint or her formal EEO complaint.  (DEX1, DEX 10 & DEX 11.)  Initially, Ms. Windsor claimed the denied upgrade was due to her race, but subsequently she amended her informal EEO complaint to allege race and retaliation.  (DEX 11.)  At no time did Ms. Windsor amend her EEO complaint to raise a claim of sex discrimination.  Ms. Windsor was questioned during the EEO

Fact-Finding Conference, with legal counsel present, regarding the scope of her complaint. The following exchange occurred:

> Q:    The notice of acceptance dated 21 April 2004 states that Ms. Ruthie Windsor alleges discrimination based upon her race, black, and her previous EEO activity when on August 20th 2002, Ms. Windsor, Lieutenant Colonel Darrow, Director of Tech Support Directorate, U.S. Army Aviation Technical Test Center, and Colonel David Cripps, Commander of the U.S. Army Technical Test Center [sic] did not warrant a promotion. Is this an accurate summary of your complaint.
>
> A:    That's correct.

(DEX 2, OCI Testimony, p. 5; DEX 16, Notice of Accepted Issue, Dated 21 April 2004.) Due to the fact that Ms. Windsor never raised any claim of sex discrimination during the EEO process, she is precluded from raising these claims for the first time in federal court. *See* Griffin, 755 F.2d at 1522; *see also* James v. State of Alabama Dep't of Revenue, 2006 U.S. Dist. LEXIS 5311 (M.D. Ala. January 27, 2006) (dismissing race claim from federal lawsuit where plaintiff only raised a retaliation claim in her EEO complaint).

Furthermore, Ms. Windsor never raised any claim concerning her performance evaluation in January of 2003, nor did she raise any claim concerning the transfer of other information specialists to a different division that allegedly occurred during August of 2002. (DEX 1 & DEX 10.) The only claim that Ms. Windsor pursued in the EEO administrative process concerned the agency's decision that her position did not warrant an upgrade to the GS-12 level.[5] As such, all

---

[5] To the extent that Plaintiff argues that her retaliation claim concerning her performance evaluation claim does not need to be administratively exhausted pursuant to Swanson v. Civil Air Patrol, 37 F.Supp. 2d 1312, 1328 (M.D. Ala. 1998), the Defendant would contend that such authority is factually distinguishable from the instant case. While Swanson may allow an

claims other than Ms. Windsor's non-promotion claim should be dismissed for lack of subject

matter jurisdiction.

## MOTION FOR SUMMARY JUDGMENT

### A.    Standard of Review

Rule 56 (c), Federal Rules of Civil Procedure, provides in pertinent part, that:

> The judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any, show that there is no genuine
> issue as to any material fact and that the moving party is entitled to
> judgment as a matter of law.

A plaintiff is not entitled to a full trial on the merits if summary judgment is appropriate.

The Supreme Court has held that when a plaintiff presents no evidence to support an essential

element of his or her case the case is subject to summary judgment:

> In our view, the plain language of Rule 56(b) mandates the entry of
> summary judgment . . .  against a party who fails to make a
> showing sufficient to establish the existence of an element essential
> to that party's case and on which that party will bear the burden of
> proof  at trial.  In such a situation, there can be "no genuine issue as
> to any material fact," since a complete failure of proof concerning
> an essential element of the nonmoving party's case necessarily
> renders all other facts immaterial.

Celotex Corporation v. Catrett, 477 U.S. 317, 322-23 (1986); *see also* Brown v. Crawford, 906

F.2d 667, 669 (11th Cir. 1990).

---

unexhausted retaliation claim growing out of a claim properly before the Court, Ms. Windsor's
retaliation claim is not based upon a claim that is not currently before the Court, but the EEO
complaint that was filed in January of 2001. (DEX 2, p. 7.)  The claim currently before the Court
is Ms. Windsor's EEO complaint filed on October 21, 2002.  (DEX 1.)  Even if this Court finds
that Ms. Windsor's retaliation claim grows out of a claim properly before the Court, nevertheless,
Ms. Windsor's sex discrimination and alleged transfer claims are due to be dismissed for failure
to exhaust administrative remedies.

The party moving for summary judgment bears the initial burden of explaining the basis of his motion and calling the Court's attention to the parts of the record which he claims indicate the absence of any factual issue.  <u>Celotex</u>, 477 U.S. at 323.  Once he does so, the non-moving party may not simply rely solely on the pleadings, but by affidavits, depositions, answers to interrogatories or admissions must show that there are specific facts demonstrating that there is a genuine issue for trial.  Fed. R. Civ. P. 56(c),(e); <u>Celotex</u>, 477 U.S. at 324.[6]  When doubts remain after the proof has been submitted by each party, the trial court must consider all reasonable doubts in favor of the non-moving party, however, it is not required to resolve all doubts in such a manner.  <u>Barnes v. Southwest Forest Indus., Inc.</u>, 814 F.2d 607, 609 (11th Cir. 1987).

In an opinion issued the same day as <u>Celotex</u>, the Court refined what it meant by a "genuine issue":

> If the evidence is merely colorable, . . . or is not significantly
> probative, . . . summary judgment may be granted . . . .  The mere

---

[6]  Summary judgment may also be granted based upon facts developed during the administrative proceedings, the pleadings, and supplemental affidavits.  <i>See</i> <u>Yartzoff v. Thomas</u>, 809 F.2d 1371, 1374-75 (9th Cir. 1987); <u>Chalk v. Secretary of Labor</u>, 565 F.2d 764 (D.C. Cir. 1977), <i>cert. denied</i>, 435 U.S. 945 (1978); <u>Ballinger v. North Carolina Agric. Ext. Serv.</u>, 815 F.2d 1001, 1004, 1006 (4th Cir. 1987) (the court considered the administrative record in affirming an order granting summary judgment); <u>Sperling v. United States</u>, 515 F.2d 465, 484 (3d Cir. 1975) (agency record can be reviewed on a motion for summary judgment); <u>Simmons v. Marsh</u>, 690 F. Supp. 1489, 1491 n.12 (E.D. Va. 1988), <i>aff'd</i>, 852 F.2d 566 (4th Cir. 1988) (holding that even though a Federal sector employee is entitled to a <i>de novo</i> hearing, the court should consider a well-developed record, which included the transcript of sworn testimony before the EEOC, in deciding whether to grant summary judgment to defendant); <u>Cordy v. Shephard</u>, 481 F.Supp. 67, 69 (E.D. Pa. 1979) (holding that "[t]he administrative record, though not conclusive, may be considered in determining whether a genuine issue of fact for trial exists"); <u>Jones v. United States Postal Serv.</u>, 78 F.R.D. 196, 200 (E.D. Mich. 1978) (holding that administrative record may be the basis for a grant of summary judgment); <i>see also</i> <u>Chandler v. Roudebush,</u> 425 U.S. 840, 863 n.39 (1976) (observing that prior administrative record is admissible in <i>de novo</i> federal-sector employment discrimination case and that trial court may consider such materials in pre-trial motions).

> existence of a scintilla of evidence in support of the plaintiff's
> position will be insufficient; there must be evidence on which the
> jury could reasonably find for the plaintiff.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986); *see also* Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts").

In short, Celotex and Anderson conditioned a litigant's right to a day in court on that litigant's ability to show a practical purpose will be served by affording them that day

In Celotex, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  477 U.S. at 327.

## B.    <u>Standard of Proof</u>

Plaintiff can prove his case by offering direct or circumstantial evidence of discrimination.  Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact without inference or presumption.  Castle v. Sangamo Weston, Inc., 837 F.2d 1550, 1558 n.13 (11th Cir. 1988). For evidence to qualify as direct evidence, it must directly reflect a discriminatory animus and directly address the employment action at issue. Carter v. Three Springs Residential Treatment, 132 F.3d 635, 642 (11th Cir. 1998) (holding that direct evidence must not be susceptible to more than one interpretation and must directly relate to the employment decision at issue).  Because Plaintiff cannot offer any direct evidence of reprisal or race or sex discrimination, her claims must rely on circumstantial evidence, and are thus

subject to the well-established burdens of proof analysis set forth in <u>McDonnell Douglas Corp. v.</u> <u>Green</u>, 411 U.S. 792 (1973); *see also* <u>Elrod v. Sears, Roebuck & Co.</u>, 939 F.2d 1466, 1469 (11th Cir. 1991).

### 1.    **Retaliation**

To establish a *prima facie* case of retaliation, Ms. Windsor must show: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link between her protected activity and the adverse employment action. *See* <u>Gupta v. Florida Bd. of</u> <u>Regents</u>, 212 F.3d 571, 587 (11th Cir. 2000); <u>Farley v. Nationwide Mut. Ins.</u>, 197 F.3d 1322, 1336 (11th Cir. 1999); <u>Little v. United Technologies</u>, 103 F.3d 956, 959 (11th Cir. 1997).

### 2.    **Disparate Treatment Discrimination**

To establish a *prima facie* case of disparate treatment race or sex discrimination, Plaintiff must show that: (1) she belongs to a protected category under Title VII; (2) she was subject to an adverse personnel action; (3) she was treated less favorably than similarly situated employees outside her protected category; and (4) she was qualified to do his job. <u>McDonnell Douglas</u>, 411 U.S. at 801; <u>Holifield v. Reno</u>, 115 F.3d 1555, 1562 (11th Cir. 1997) (*per curiam*); <u>Chapman v.</u> <u>A.I. Transport</u>, 229 F.3d 1012, 1030 (11th Cir. 2000).

Once a plaintiff proves a *prima facie* case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the employment decision. <u>Elrod</u>, 939 F.2d at 1470; *see also* <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981); <u>Turlington v.</u> <u>Atlanta Gas Light Co.</u>, 135 F.3d 1428, 1432 (11th Cir. 1998). Defendant's burden in articulating a legitimate, nondiscriminatory reason for its action is exceedingly light. <u>Burdine</u>, 450 U.S. 248; <u>Cooper v. Southern Co.</u>, 390 F.3d 695, 725 (11th Cir. 2004). Importantly, this burden is one of

production - not proof or persuasion, Perryman v. Johnson Prods. Co., 698 F.2d 1138, 1142 (11th Cir. 1983), and the proffered justification need only be one that "might motivate a reasonable employer." Chapman, 229 F.3d at 1031.

Once defendant meets its burden of production, the burden shifts back to the plaintiff to present "significantly probative" evidence to prove defendant's articulated reason is merely pretext for intentional discrimination. Elrod, 939 F.2d at 1470 (citing Carter v. Miami, 870 F.2d 578, 584 (11th Cir. 1989)). A plaintiff can prove pretext by showing defendant's reason is "unworthy of credence or by showing that the protected characteristic more than likely motivated" the defendant's decision. Id. If a plaintiff chooses to establish pretext by showing that the employer's proffered reason is unworthy of credence, he must attack that reason "head on and rebut it." Chapman, 229 F.3d at 1030.

"Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted).[7] At this stage, a plaintiff's obligation "merges with the ultimate burden of persuading the court that he has been the victim of intentional discrimination." Burdine, 450 U.S. at 256.

### C.     Plaintiff Failed to Establish a *Prima Facie* Case for Retaliation.

--------

[7]  *See* Bennett v. Parker, 898 F.ed 1530, 1533-34 (11th Cir. 1990) (A "conclusory allegation" cannot defeat summary judgment.); Grigsby v. Reynolds Metals Co., 821 F.2d 509, 597 (11th Cir. 1987) ("Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of . . . intentional discrimination."); *see also* Betkerur v. Aultman Hosp. Ass'n, 78 F.3d 1079, 1096 (6th Cir. 1996) ("Rumors, conclusory allegations, and subjective beliefs . . . are wholly insufficient evidence to establish a claim of discrimination as a matter of law."); Douglas v. United Serv. Auto. Ass'n 79 F.3d 1415, 1429 (5th Cir. 1996) ("Conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden.").

1.    **Adverse Employment Actions**

For purposes of this motion only, the Defendant will concede that the alleged failure to promote Ms. Windsor could qualify as an adverse personnel action under Title VII's retaliation provision.  Burlington Northern and Sante Fe R. R. Co. v. White, No. 05-259, 2006 WL 1698953 (June 22, 2006).

Notwithstanding this concession, Ms. Windsor's allegation that her written job was altered, that she received a "lower" performance appraisal or that other employees were transferred fails to make a *prima facie* case because they are not adverse employment actions. The Supreme Court recently held in Burlington Northern and Sante Fe R.R. v. White,   No. 05-259, 2006 WL 1698953 (June 22, 2006), that a plaintiff's retaliation claim need only establish that the alleged conduct would objectively "deter victims of discrimination from complaining to the EEOC." Id. *(quoting* Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C.Cir. 2006)).  While the Burlington Northern decision may lower the standard for what a plaintiff must establish on a retaliation claim, Ms. Windsor's claims regarding her job description, her performance evaluation, and the transfer of others do not even meet this lesser standard.[8]

a.    Written Job Description

_____

[8]  It is arguable whether the Supreme Court's decision in Burlington Northern alters the standard already employed by the Eleventh Circuit in retaliation cases.  *See* Reis v. Universal City Dev. Partners, LTD, 442 F.Supp. 2d 1238, 1253 (M.D. Fla. 2006).  The Reis court pointed out that the standard articulated in Burlington Northern is substantially the same standard that the Eleventh Circuit carved out in Doe v. Dkalb County Sch. Dist., 145 F.3d 1441, 1447, 1449, 1453 (11th Cir. 1998) (holding that plaintiff must demonstrate that a reasonable person in plaintiff's position would view the employment action as adverse and that the adversity must be material). The Eleventh Circuit has held long before Burlington Northern that a purported adverse action must operate a material change to a reasonable person.  *See* Doe, 145 F.3d at 1453; *see also* Collins v. Miami-Dade Co., 361 F.Supp. 2d 1362, 1370 (S.D. Fla. 2005) (using Doe analysis to find that performance evaluation is not actionable under Title VII).

Ms. Windsor's claim is not that her substantive duties were altered by management (which could be considered an adverse action for retaliation purposes according to Burlington Northern) but that her written job description was changed. (Complaint, p. 4, ¶ 18.)  Plaintiff cannot show how any alleged change to the written job description had a practical impact upon her daily work.

To the extent that Ms. Windsor claims the changed job description was the precatory step to th denial of her upgrade, then the change to the job description would be a mediate decision outside the contours of Title VII.  Specifically, "interlocutory and mediate decisions having no **immediate** effect on employment conditions" do not qualify as adverse personnel actions under Title VII.  Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981) (emphasis added); *see also* Ferguson v. Veterans Admin., 723 F.2d 871, 872 (11th Cir. 1984) (adopting as law of the circuit the reasoning and conclusion of the Fourth Circuit in Page v. Bolger).  Ms. Windsor's allegation that her job description was altered which eventual prevented her position from being upgraded is a "mediate or interlocutory action" that does not fall within the proscription of Title VII.   Pursuant to Ferguson, Ms. Windsor can allege the eventual employment action, the failure to upgrade, as a distinct cause of action under Title VII (which she has done), but not each and every step that might lead to this eventual destination.  Because Ms. Windsor raises a separate claim of retaliation regarding the failure to upgrade her position, her job description claim is superfluous and not actionable as a mediate action.

b.    Transfer of Other Information Specialists

Ms. Windsor cannot meet the "likely to deter" standard for claims that other employees received transfers.  (Complaint, p. 3, ¶ 11.)   Ms. Windsor can offer no evidence that she was qualified or capable of performing the functions of the other information specialists.  She cannot

show how any of alleged transfers of unnamed co-workers impacted upon her position or affected her in any way.  There is no evidence to show how the transfer of other IT specialists to other directorates impacted upon Ms. Windsor's pay, prestige or promotion potential.

c.    <u>Performance Appraisal</u>

Ms. Windsor received a "2" rating on her 2002 performance.  (DEX 13.)  LTC Darrow testified that a rating of "1," "2," or "3" were all considered "fully successful" ratings.  (DEX 14.) The Plaintiff cannot show that receiving a "2" rating as opposed to a "1" or a "3" rating would likely deter a reasonable person from complaining to the EEOC.  In fact, Ms. Windsor cannot show that this individual rating had any concrete impact on her or her working environment at all. Without this evidence, Ms. Windsor cannot establish that the alleged wrongs would be materially adverse to a reasonable person.

**2.    <u>No Connection between Protected Activity and Alleged Employment Actions</u>**

Assuming *arguendo* that Plaintiff could establish that all her claims are actionable adverse personnel actions, the Plaintiff cannot show a causal connection between any protected activity and the alleged adverse actions.   The Supreme Court has held that "mere temporal proximity between . . . knowledge of protected activity and an adverse . . . action . . . must be 'very close'" <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273 (2001).  In fact, the Court held that a three to four month disparity was insufficient to show casual connection.  <u>Id.</u> (*citing* <u>Richmond v. Oneok, Inc.</u>, 120 F.3d 205, 209 (10th Cir. 1997) (three-month period insufficient) and <u>Hughes v. Derwinski</u>, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (four-month period insufficient)); *see* <u>Drage v.</u>

Jenne, NO. 05-11276, 2006 WL 1737358 (June 27, 2006); Maniccia v. Brown, 171 F.3d 1364,

1370 (11th Cir. 1999).

      None of the claims raised by Ms. Windsor has a close temporal nexus with her protected

activity.  Ms. Windsor identified her prior EEO activity as the filing of a formal EEO complaint in

June of 2000. (DEX 2,  OCI Testimony of June 23, 2004, p. 7.)  Ms. Windsor alleges that she was

told her job would not be promoted/upgraded on August 20, 2002. (DEX 1.)  Ms. Windsor alleges

that she received a lower performance evaluation on January 21, 2003. (Complaint, p. 4, ¶ 17.)[9]

There is at least a two-year gap between the protected activity and the alleged adverse

employment action. *See* Watkins v. Montgomery County Board of Health, 2006 U.S. Dist. LEXIS

53953 *45 (M.D. Ala. August 1, 2006) (finding that seven-month gap was insufficient for

Plaintiff to establish a causal nexus).   For these reasons, Ms. Windsor cannot establish a *prima*

*facie* claim of retaliation.

    **D.**    **Plaintiff Failed to Establish a Prima Facie Case of Discrimination**.

        **1.**    **Adverse employment actions**

      For purposes of this motion only, the Defendant will concede that the agency's decision

not to upgrade Ms. Windsor's position could be determined to be an adverse employment action

for purposes of race or sex discrimination.  The remaining allegations raised by Ms. Windsor in

her race and sex discrimination claims are not adverse employment actions.   Ms. Windsor cannot

show an adverse impact on the terms, conditions or privileges of his employment, when other

---

    [9] Plaintiff's attempt to show a causal nexus between her prior protected activity and her
"lowered" performance evaluation is further prevented by the fact that she can provide no
evidence that her senior rate, Larry Eagerton, was aware of her prior protected activity when he
gave her a "2" rating.  (DEX 13.)

information specialists were transferred to a different division.  Davis v. Town of Lake Park, Florida, 245 F.3d 1232, 1238 (11th Cir. 2001) (holding that not all conduct by an employer negatively affecting an employee constitutes adverse employment action, but requiring that the action affect the terms, conditions, or privileges of their employment).  The lesser standard articulated in Burlington Northern (*see supra*) for retaliation claims is not applicable to discrimination claims under Title VII.  Plaintiff cannot show how the alleged transfer of other employees to a different division affected a term, condition, or benefit of her employment.[10]

### 2.    Similarly Situate Persons Outsider Her Protected Class

Ms. Windsor failed to establish that a similarly situated comparitor outside her protected class received more favorable treatment.  Specifically, Ms. Windsor claims Mr. Rex Donaldson (Caucasian Male) had his position upgraded from GS-11 to GS-12 by the Army.  (Complaint, p. 3, ¶ 7.)  In fact, Mr. Donaldson is currently a GS-11 and has never assumed a GS-12 position.  (DEX 12.)  Mr. Donaldson is in exactly the same grade-level as Ms. Windsor.  If anything, this alleged comparitor shows that Ms. Windsor received equal treatment to Mr. Donaldson.

### E.    The Army had Legitimate Reasons for the Alleged Employment Actions Which Were Not Pretext for Retaliation or Discrimination.

Even if Ms. Windsor were able to establish a *prima facie* case of retaliation or race discrimination, the Army had legitimate, nondiscriminatory, non-retaliatory reasons for taking the employment actions.

---

[10]  Ms. Windsor fails to allege in her judicial complaint that her "lowered" performance appraisal or the change to her written job description were motivated by either race or sex discrimination, and thus, those claims are not before this Court.  She only raises this factual allegations in the context of her retaliation claim.  Defendant will confine his disparate treatment analysis to Ms. Windsor's allegations of failure to upgrade and the transfer of other employees.

### 1.    Ms. Windsor's Position Was Not Upgraded Because Her Job Duties Did Not Warrant an Upgrade

Ms. Windsor alleges that her position description should have been graded at the GS-12 level and that she deserved a resulting upgrade. (Complaint.)  The Defendant maintains that Ms. Windsor's position was not upgraded to the GS-12 level because a neutral review of Ms. Windsor' job description by CPOC determined that Ms. Windsor's position was properly graded at the GS-11 level.  It should be noted that Ms. Windsor has no experience in job classification or grading and makes her  allegations based solely upon her personal opinion. *See* Lewis-Webb v. Qualico Steel Co., 929 F.Supp. 385, 392 (M.D. Ala. 1996)  ("'Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions or rumors.'") (*quoting* Rand v. CF Indus., Inc., 42 F.3d 1139, 1146 (7th Cir. 1994)).  Contrary to Ms. Windsor's baseless assertions, her job description and its contained duties were determined by the CPOC specialist, Ms. Trish Huck, to equate to the GS-11 level.  (DEX 17, Huck Declaration; DEX 2, 80-81 & 118-119; DEX 18.)  The CPOC specialist reviewed Ms. Windsor's job description against the classification standards, provided a weighted grade for each factor in the position description  and the resulting total graded as a GS-11.  (DEX 17; DEX 15.)

Closely allied with Ms. Windsor's non-promotion claim is her unsubstantiated claim that the Army altered her job description prior to sending it to CPOC for grading. (Complaint, p. 4, ¶ 18.)  This claim, based upon the Plaintiff's own admission, is nothing more than blatant speculation.  Ms. Windsor actively engaged with management to draft a job description before it was sent to CPOC for grading.  (DEX 2, p. 22-23; 45-6 55-57.)   After Ms. Windsor made various changes, the latest version of her job description, "Windsor5.doc," was sent to CPOC for grading.

(Id; *Compare* DEX 15 and DEX 19, Pen and Ink Changes to Windsor 5 by Ruthie Windsor.) CPOC graded Ms. Windsor position description at the GS-11 level. (DEX 17; DEX 18; DEX 15.) Ms. Windsor admitted that "Windsor5.doc" accurately described her duty position. (DEX 2, p. 57-8.)  "Windsor5.doc" was a Microsoft Word document that could be edited and changed by any recipient. (Id at p. 58-9.)  In order to ensure that no changes were made after Ms. Windsor certified that Windsor5.doc was an accurate job description, COL Cripps directed that a scanned copy of Windsor5.doc be sent to CPOC.  (DEX 3.)   Ms. Windsor admitted in her testimony that a scanned copy of Windsor5.doc would provide additional security because it prevented anyone from making changes. (DEX 2, p. 59-60.) The scanned copy of the document "Windsor5.doc" was named "Windsor.tif". (DEX 2, p. 129-130.)

Ms. Windsor admitted that she has never seen the "windsor.tif" document and thus cannot testify that its contents are different from "Windsor5.doc". (DEX 2, p. 43 & 60.)   The CPOC specialist testified that in grading Ms. Windsor's position she reviewed the position description (#EG127165).  (DEX 17.)  The position description matching this number is the exact same as the position description that incorporates Ms. Windsor's requested changes, Windsor5.doc. (*Compare* DEX 15 & 19.)   Additionally, Position Description #EG127165 contains the grade point levels for each factor in Ms. Windsor's position description and demonstrates that the cumulative score of all these factors equates out to the GS-11 level.  (DEX 15.)

## 2.        Transfers of Other Information Specialists

Ms. Windsor alleges that she was discriminated based upon her sex when other information specialists were transferred to a different division in approximately August of 2002. (Complaint.)   Notwithstanding Ms. Windsor's failure to exhaust this claim administratively (*see*

*supra*), the Defendant had legitimate nondiscriminatory reasons for not transferring her. While other information specialist were transferred due to the organizational restructuring, the information technology specialist's duties that Ms. Windsor performed were manifestly and substantially different from the other information technology specialists in ATTC. (DEX 14.) As evidenced by Ms. Windsor's position description, Ms. Windsor's sub-speciality is information technology regarding information security. (Id. & DEX 15.) The other information specialists performed duties more related to data processing from flight tests and other telemetry analysis. (DEX 14.) Because of the specialized nature of her information specialist duties regarding information security, Ms. Windsor needed to remain in the Test Support Directorate as compared to other information specialists. (Id.)

### 3.    Lower Performance Evaluation

For her 2002 annual evaluation, Ms. Windsor received the second highest rating. (DEX 13.) She alleges that she should have received the highest rating, "1," because she had received "1" ratings in the past. (DEX 2, p. 31.)  *See* Billet v. Cigna Corp., 940 F.ed 813, 826 (3d Cir. 1991) ("Prior good evaluations alone cannot establish that later unsatisfactory evaluations are pretextual.  To hold otherwise would be to hold that things never change, a proposition clearly without basis in reality.")

In fact, Ms. Windsor admitted that her 2002 performance evaluation was a 'higher ranking" and they she did not receive an unsatisfactory rating. (DEX 2, p. 62.) As demonstrated on the performance evaluation, while Ms. Windsor performed well, she did not "exceed" in greater than 75% of her performance objectives to warrant a "1" rating. (DEX 14 & 13)

Any claim by Ms. Windsor that her 2002 performance appraisal was motivated by discriminatory or retaliatory animus is further belied by other performance appraisals that Ms. Windsor received from the same management officials involved in the 2002 appraisal.  LTC Darrow and Mr. Larry Eagerton were the rater and senior rater, respectively, on Ms. Windsor's 2002 performance appraisal.  (DEX 13.)  LTC Darrow was Ms. Windsor's senior rater on her 2004 evaluation where he rated her a "1."(DEX 21.)  Larry Eagerton was the senior rater who gave Ms. Windsor a "1" on her December 2000 performance evaluation, a mere 6 months after her protected activity.  (DEX 22.)  If Ms. Windsor's 2002 performance evaluation was truly motivated by race, sex and retaliation, then it makes no sense that the same management officials would give her "1" ratings on other performance evaluations.

### 4.    <u>Plaintiff Cannot Rebut the Defendant's Legitimate Nondiscriminatory, Non-Retaliatory Response to the Contested Employment Actions</u>.

Because the Defendant has articulated legitimate, nondiscriminatory, non-retaliatory reasons for the alleged employment actions, the Plaintiff can survive summary judgment only by presenting "concrete evidence in the form of specific facts" which show that the defendant's action was pretextual.  <u>Earley v. Champion Int'l Co.</u>, 907F.2d 1077, 1081 (11th Cir. 1990); *see also* <u>Grigsby v. Reynolds Metals, Co.</u>, 821 F.2d 590, 594 (11th Cir. 1987).  Conclusory allegations of discrimination or retaliation are insufficient.  <u>Earley</u>, 907 F.2d at 1081; <u>Grigsby</u>, 821 F.2d at 594.  It is not enough that the plaintiff show that the employer's articulated reason is not the true reason; the plaintiff must also show that the articulated reason masks unlawful discrimination.  <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 515 (1993).

Ms. Windsor cannot present any probative evidence that the articulated reason for the Army's actions were pretext for retaliation or discrimination. Ms. Windsor's subjective beliefs cannot be probative evidence of pretext, and therefore, cannot be the basis of judicial relief. Grigsby, 821 F.2d at 595; Elliot v. Group Medical & Surgical Service, 714 F.2d 556, 557 (5th Cir. 1983), *cert. denied*, 467 U.S. 1215 (1984); *see also* Billet v. CIGNA Co., 940 F.2d 812, 816 (3d Cir. 1991).

While the plaintiff may feel that she has been treated unfairly, Title VII does not protect "against harsh treatment at the workplace." Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984). In fact, an employer can make a business decision "for a good reason, a bad reason . . . or for no reason at all, as long as its action is not for a discriminatory reason." Id. (*citing* Megill v. Board of Regents, 541 F.2d 1073, 1077 (5th Cir. 1976). The federal anti-discrimination laws were not designed to provide a forum for disgruntled employees to state their objections to legitimate employment practices. Nor were these laws intended to burden the federal courts with the task of acting as "super personnel departments" to divine whether an employer's decision was just or proper. Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991).

Ms. Windsor's allegations are nothing more than her quibbling with the business judgment of his employer. A plaintiff's pretext claim will fail where she merely questions the wisdom of the employer's reasons, at least where the reason is one that might motivate a reasonable employer. Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997) *cert. denied, sub nom.*, Combs v. Meadowcraft Co., 522 U.S. 1045 (1998). Because the decisions at issue in this

case were based upon legitimate employment criteria that are not a pretext for discrimination, the Defendant is entitled to summary judgment.

### IV.  CONCLUSION

WHEREFORE, the Defendant, Secretary of the Army, respectfully moves the Court for an order granting summary judgment and dismissing Plaintiff's complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure, because there are no genuine issues of material fact and the Defendant is entitled to judgment as a matter of law.

Respectfully submitted this the 24th day of October, 2006.

LEURA G. CANARY
United States Attorney

By: s/R. Randolph Neeley
R. RANDOLPH NEELEY
Assistant United States Attorney
Bar Number: 9083-E56R
Post Office Box 197
Montgomery, AL  36101-0197
Telephone No.: (334) 223-7280
Facsimile No.: (334) 223-7418
**E-mail: rand.neeley@usdoj.gov**

OF COUNSEL:

Mr. Brian Bentley
U.S. Army Litigation Division
901 North Stuart Street, Suite 401
Arlington, VA 22203-1837
(703) 696-2504

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 24, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Plaintiff's attorney, Henry L. Penick, Esq.

                         <u>  /s/R. Randolph Neeley          </u>
                         Assistant United States Attorney